**ALAN R. OSTERGREN**

ALAN R. OSTERGREN, P.C.
500 EAST COURT AVENUE, SUITE 420
DES MOINES, IA 50309
515-207-0134 - ALAN.OSTERGREN@OSTERGRENLAW.COM

May 13, 2026

*Via personal delivery*

Logan Missouri Valley Country Club
2455th Hwy 30th
Logan, IA 51546-6012

Re: *United States ex rel. The Tarbell Group, LLC v. Logan Missouri Valley Country Club, et al.*, No. 4:25-cv-119-SHL-SBJ (S.D. Iowa)

Dear Sir or Madam:

I represent The Tarbell Group, LLC (the "Relator") in the above-named case, in which Logan Missouri Valley Country Club is a defendant. The summons and complaint for the case are enclosed.

The Relator is suing on behalf of the United States to recover money wrongfully taken by Logan Missouri Valley Country Club from the government as part of the pandemic-era Paycheck Protection Program ("PPP"), despite being ineligible to receive such funds due to its status as a tax-exempt, nonprofit organization and as a private club. Specifically, Title 13 of the national Code of Federal Regulations, section 120.110, states: "What businesses are ineligible for SBA business loans? The following types of businesses are ineligible: (a) Non-profit businesses . . .(i) Private clubs . . ."

The suit is brought under the False Claims Act. Under the Act, the damages owing include triple the amount of damage suffered by the government—including the funds and lender fees—plus interest, civil penalties ranging from some $14,000 to $29,000 per violation, and Relator's attorney's fees, expenses and costs. The individuals who caused the fraud bear personal liability, as well. *See* 31 U.S.C. §§ 3729(a)(1), 3730(d)(2); 28 C.F.R. § 85.5(a) (2026).

I would like to propose for your consideration a swift and amicable resolution of this matter. Reflecting the treble damages provided for under the False Claims Act, your liability is approximately $107,652.50, not including interest and the considerable expenses and attorney fees that the parties would incur should the case proceed, for all of which you would be liable. That figure is calculated per the following table:

EXHIBIT
1
exhibitsticker.com

| Loan # | Amount forgiven | Lender fee | Subtotal | x3 | Civil penalty | Total |
|---|---|---|---|---|---|---|
| 6235627005 | $25,090.00 | $1,254.50 | $26,344.50 | $79,033.50 | $28,619.00 | $107,652.50 |

The Relator offers to settle with you, jointly and severally with the individual defendants who procured the loan and who bear personal liability under 31 U.S.C. § 3729, on the following terms: $60,180.00, representing the twice amount of the loan forgiveness wrongfully received, plus $10,000 in attorney's fees, costs and expenses. 2x damages is a typical early settlement amount in PPP fraud cases brought by the Relator and others. A few examples are enclosed. The government would have to consent to any settlement after we reach agreement in principle. *See* 31 U.S.C. § 3730(b)(1). Unless earlier rescinded, this offer terminates upon the filing of a responsive pleading or dispositive motion by you.

Please feel free to write or call me to discuss this matter further, or to have your lawyer do so. Thank you.

Sincerely,

Alan R. Ostergren

Enclosures

cc: Bruce Ellis Fein
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, Virginia 22066
703-248-0390
bruce@newdream.net

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Iowa

United States of America ex rel.
The Tarbell Group, LLC,

*Plaintiff(s)*

v.

Adams County Development Corp., et al.

*Defendant(s)*

Civil Action No. 4:25-cv-119-SHL-SBJ

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Logan Missouri Valley Country Club
Kristin Janssen, Registered Agent
312 E. Erie St.
Missouri Valley IA 51555

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Alan R. Ostergren
500 East Court Ave., Suite 420
Des Moines IA 50309

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

UNITED STATES DISTRICT COURT · SOUTHERN DISTRICT OF IOWA

SUMMONS ISSUED

Date: 5/14/2026

Chandlor G. Collins, Clerk

By: [signature]

CLERK

Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* ____________ .

❒ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* ____________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ____________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ____________
____________________ on *(date)* ____________ ; or

❒ I returned the summons unexecuted because ____________________ ; or

❒ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ ________ .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

United States of America ex rel.
The Tarbell Group, LLC,

Plaintiff

v.

Adams Community Economic Development Corporation,
Agribusiness Association of Iowa,
Ames Golf and Country Club,
Appanoose Country Club,
Aspen Grove Cemetery Association,
Atlantic Golf & Country Club,
Audubon Golf and Country Club,
Bloomfield Country Club,
Brotherhood of Locomotive Engineers Gene,
Centerville Chamber of Commerce,
Columbus Club Inc.,
Crestmoor Golf Club Inc.,
The Des Moines Embassy Club,
Fraternal Order of Eagles—Aerie 3876,
Geneva Golf & Country Club,
Green Acres Club,
Happy Hollow Country Club,
International Union of Painters and Allied Trades District Council,
Iowa Turkey Federation Inc.,
KYC Inc.,
Kalona Area Chamber of Commerce Inc.,
LakeView Golf & Country Club,
Lakeshore Golf and Country Club,
Lakeview Country Club of Madison County Iowa Inc.,
Logan Missouri Valley Country Club,
Mechanical Contractors Association of Iowa Inc.,
Muscatine County Fair,
Muscatine Mutual Insurance Association,
Oakdale Memorial Gardens Inc.,
The Outing Club,
Pine Knolls Company dba Pine Knolls Golf Club,

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Case no. 4:25-cv-119-SHL-SBJ

The Red Oak Country Club,
Sigma Lambda Beta International Fraternity,
Treynor Recreation Area,
Urbandale Golf and Country Club,
Washington Golf & Country Club, and
West Liberty Golf and Country Club,

Defendants

## COMPLAINT

### Nature of the Case

1. Relator The Tarbell Group, LLC, brings this action for itself and the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, to recover funds illegally obtained by the defendants under federal COVID-19 relief laws.

### Jurisdiction and Venue

2. The Court has jurisdiction of, and is the appropriate venue for, this matter because it arises under a federal law, because the United States is a plaintiff, and because in this judicial district each defendant can be found, resides, transacts business in, or committed an act proscribed by the False Claims Act. 28 U.S.C. §§ 1331, 1345; 31 U.S.C. § 3732(a).

### Parties—Relator

3. Relator The Tarbell Group, LLC, is a limited liability company located in and organized under the laws of the Commonwealth of Virginia.

### Parties—501(c)(5) Defendants

4. Defendant Agribusiness Association of Iowa is an entity exempt from taxation under section 501(c)(5) of the Internal Revenue Code, 26 U.S.C. § 501(c)(5) ("Tax-Exempt 501(c)(5) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 900 Des Moines Street, Des Moines, IA.

5. Defendant Brotherhood of Locomotive Engineers Gene is a Tax-Exempt 501(c)(5) Organization. On the loan application(s) at issue herein, this defendant gave its address as 501 2nd Street North, Clinton, IA.

6. Defendant International Union of Painters and Allied Trades District Council is a Tax-Exempt 501(c)(5) Organization. On the loan application(s) at issue herein, this defendant gave its address as 5738 NW 2nd Street, Des Moines, IA.

7. Defendant Iowa Turkey Federation Inc. is a Tax-Exempt 501(c)(5) Organization. On the loan application(s) at issue herein, this defendant gave its address as 535 Lincoln Way East, Ames, IA.

8. Defendant Muscatine County Fair is a Tax-Exempt 501(c)(5) Organization. On the loan application(s) at issue herein, this defendant gave its address as 101 North Clay Street, West Liberty, IA.

**Parties—501(c)(6) Defendants**

9. Defendant Adams Community Economic Development Corporation is an entity exempt from taxation under section 501(c)(6) of the Internal Revenue Code, 26 U.S.C. § 501(c)(6) ("Tax-Exempt 501(c)(6) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 701 Davis Avenue, Corning, IA.

10. Defendant Centerville Chamber of Commerce is a Tax-Exempt 501(c)(6) Organization. On the loan application(s) at issue herein, this defendant gave its address as 128 North 12th Street, Centerville, IA.

11. Defendant Kalona Area Chamber of Commerce Inc. is a Tax-Exempt 501(c)(6) Organization. On the loan application(s) at issue herein, this defendant gave its address as 514 B Avenue, Kalona, IA.

12. Defendant Mechanical Contractors Association of Iowa Inc. is a Tax-Exempt 501(c)(6) Organization. On the loan application(s) at issue herein, this defendant gave its address as 3066 104th Street, Urbandale, IA.

**Parties—501(c)(7) Defendants**

13. Defendant Ames Golf and Country Club is an entity exempt from taxation under section 501(c)(7) of the Internal Revenue Code, 26 U.S.C. § 501(c)(7) ("Tax-Exempt 501(c)(7) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 5752 George Washington Carver Avenue, Ames, IA.

14. Defendant Appanoose Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1998 Country Club Drive, Centerville, IA.

15. Defendant Atlantic Golf & Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as PO Box, Atlantic, IA.

16. Defendant Audubon Golf and Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 520 South Division Street West, Audubon, IA.

17. Defendant Bloomfield Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1205 East Franklin Street, Bloomfield, IA.

18. Defendant Columbus Club Inc. is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 807 Avenue H, Fort Madison, IA.

19. Defendant Crestmoor Golf Club Inc. is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1801 West Townline Street, Creston, IA.

20. Defendant The Des Moines Embassy Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 666 Grand Avenue, #3300, Des Moines, IA.

21. Defendant Geneva Golf & Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 3100 Bidwell Road, Muscatine, IA.

22. Defendant Green Acres Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 913 Fruit Street, Donnellson, IA.

23. Defendant Happy Hollow Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 2068 Valley Road, Corning, IA.

24. Defendant KYC Inc. is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as PO Box 14, Keokuk, IA.

25. Defendant LakeView Golf & Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 21897 480th Street, P.O Box 412, Chariton, IA.

26. Defendant Lakeshore Golf and Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1857 Golf Club Drive, Afton, IA.

27. Defendant Lakeview Country Club of Madison County Iowa Inc. is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 3724 Lakeview Lane, Winterset, IA.

28. Defendant Logan Missouri Valley Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 2455 Highway 30, Logan, IA.

29. Defendant The Outing Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 2109 Brady Street, Davenport, IA.

30. Defendant Pine Knolls Company dba Pine Knolls Golf Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1202 South Attica Road, Knoxville, IA.

31. Defendant The Red Oak Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 2038 200th Street, Red Oak, IA.

32. Defendant Sigma Lambda Beta International Fraternity is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 7 Hawkeye Drive, Suite 103/104, North Liberty, IA.

33. Defendant Treynor Recreation Area is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 202 Buck Street, Treynor, IA.

34. Defendant Urbandale Golf and Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 4000 86th Street, Urbandale, IA.

35. Defendant Washington Golf & Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1732 Country Club Road, Washington, IA.

36. Defendant West Liberty Golf and Country Club is a Tax-Exempt 501(c)(7) Organization. On the loan application(s) at issue herein, this defendant gave its address as 1248 Country Heights Lane, West Liberty, IA.

**Parties—501(c)(8) Defendants**

37. Defendant Fraternal Order of Eagles—Aerie 3876 is an entity exempt from taxation under section 501(c)(8) of the Internal Revenue Code, 26 U.S.C. § 501(c)(8) ("Tax-Exempt 501(c)(8) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 118 South 5th Street, Missouri Valley, IA.

**Parties—501(c)(13) Defendants**

38. Defendant Aspen Grove Cemetery Association is an entity exempt from taxation under section 501(c)(13) of the Internal Revenue Code, 26 U.S.C. § 501(c)(13) ("Tax-Exempt 501(c)(13) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 2043 Sunnyside Avenue, Burlington, IA.

39. Defendant Oakdale Memorial Gardens Inc. is a Tax-Exempt 501(c)(13) Organization. On the loan application(s) at issue herein, this defendant gave its address as 2501 Eastern Avenue, Davenport, IA.

**Parties—501(c)(15) Defendant**

40. Defendant Muscatine Mutual Insurance Association is an entity exempt from taxation under section 501(c)(15) of the Internal Revenue Code, 26 U.S.C. § 501(c)(15) ("Tax-Exempt 501(c)(15) Organization"). On the loan application(s) at issue herein, this defendant gave its address as 200 Ford Avenue, Muscatine, IA.

## Background

41. To provide economic relief and stimulate the economy during the COVID-19 pandemic, Congress in 2020 enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, amended by, inter alia, the Paycheck Protection Program Flexibility Act of 2020, Pub. L. 116-142 and the American Rescue Plan Act of 2021, Pub. L. 117-2 (2021) (together with implementing regulations, referred to herein as the "PPP Program"). The PPP Program effectively transferred money from the federal government to eligible recipients via the United States Small Business Administration ("SBA"). The transfers took the form of private loans guaranteed, forgiven and reimbursed by SBA ("PPP Loans").

42. PPP Loan recipients could receive up to two loans, one in each of two tranches, each called a "draw," i.e., first-draw and second-draw PPP Loans.

43. A recipient could receive a second-draw loan only after having obtained a first-draw loan.

44. As a condition of receiving PPP Loans and forgiveness thereof, each applicant was required to certify its eligibility under the PPP Program.

45. The PPP Program excluded Tax-Exempt 501(c)(5) Organizations from eligibility until March 11, 2021.

46. The PPP Program excluded Tax-Exempt 501(c)(6) Organizations from eligibility until December 27, 2020.

47. The PPP Program excluded Tax-Exempt 501(c)(7) Organizations from eligibility until March 11, 2021.

48. The PPP Program excluded Tax-Exempt 501(c)(8) Organizations from eligibility until March 11, 2021.

49. The PPP Program excluded Tax-Exempt 501(c)(13) Organizations from eligibility until March 11, 2021.

50. The PPP Program excluded Tax-Exempt 501(c)(15) Organizations from eligibility until March 11, 2021.

51. Defendants each applied for and received PPP Loans for which they were legally ineligible.

52. Some defendants also applied for and received second PPP Loans for which they were ineligible as "fruit of the poisonous tree," because receipt of a first-draw loan was a prerequisite to receive a second-draw loan.

**PPP Loans**

53. Defendants received approval for, and forgiveness of, their PPP Loans on the dates and in the amounts shown on the table attached hereto, despite being legally ineligible for the same.

**First Cause of Action**
**False Claims Act, 31 U.S.C. § 3729**
**PPP Loan(s)**

54. Relator repeats and realleges each of the foregoing paragraphs.

55. Each defendant was ineligible to receive its PPP Loan(s) at the time it applied and received approval for the same.

56. Each defendant did knowingly present, or cause or be presented, a false or fraudulent claim for payment or approval, to the injury of the United States, by falsely certifying that it was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same.

57. Each defendant did knowingly make, use, or cause to be made or use, a false record or statement material to a false or fraudulent claim, to the injury of the United States, by falsely

certifying that it was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same.

58. Each defendant did knowingly make, use, or cause to be made or used, a false record or statement material to, or did knowingly conceal, or did knowingly and improperly avoid or decrease, an obligation to pay or transmit money or property to the United States government, by falsely certifying that it was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same.

**Second Cause of Action**
**False Claims Act, 31 U.S.C. § 3729**
**Fruit of the Poisonous Tree**

59. Relator repeats and realleges each of the foregoing paragraphs.

60. The following defendants received second-draw PPP Loans for which they were ineligible due to their failure lawfully to obtain first-draw PPP Loans:

a. Agribusiness Association of Iowa

b. Ames Golf and Country Club

c. Centerville Chamber of Commerce

d. Sigma Lambda Beta International Fraternity

61. Because these defendants received their first-draw PPP Loans via fraud and under false pretenses, their second-draw PPP Loans constituted "fruit of the poisonous tree" and were unlawfully obtained.

62. Each of these defendants did knowingly present, or cause or be presented, a false or fraudulent claim for payment or approval, to the injury of the United States, by falsely certifying that it was eligible for a second-draw PPP Loan and forgiveness thereof and thereby receiving the same.

63. Each of these defendants did knowingly make, use, or cause to be made or use, a false record or statement material to a false or fraudulent claim, to the injury of the United States, by falsely certifying that it was eligible for a second-draw PPP Loan and forgiveness thereof and thereby receiving the same.

64. Each of these defendants did knowingly make, use, or cause to be made or used, a false record or statement material to, or did knowingly conceal, or did knowingly and improperly avoid or decrease, an obligation to pay or transmit money or property to the United States government, by falsely certifying that it was eligible for a second-draw PPP Loan and forgiveness thereof and thereby receiving the same.

**Prayer for Relief**

65. WHEREFORE, Relator prays for the following relief against each defendant:

a. A declaration that each defendant did violate the False Claims Act;

b. An amount thrice the amount of PPP Loans and interest forgiven or otherwise not repaid with respect to each defendant, lending fees paid by SBA, foregone interest, and all other damages suffered by the United States government, plus civil penalties and applicable interest, under 31 U.S.C. § 3729(a)(1);

c. The cost of this civil action, apportioned to each defendant respectively in proportion to its share of the aggregate damages recouped herein, under 31 U.S.C. § 3729(a)(3);

d. An award to relator, including its reasonable expenses, attorneys' fees, and costs, under 31 U.S.C. § 3730(d)(1) or (2), as applicable; and

e. Such other and further relief as may be just and proper.

## Demand for Jury Trial

66. Relator demands a trial by jury.

Respectfully submitted,

/s/ Alan R. Ostergren

Alan R. Ostergren
Alan R. Ostergren, P.C.
500 East Court Avenue
Suite 420
Des Moines, IA 50309
alan.ostergren@ostergrenlaw.com
515-207-0134

/s/

Bruce Ellis Fein, Esq.
Bruce Ellis Fein, PLLC
*Pro hac vice pending*
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390

*Attorneys for Relator*

*United States of America ex rel. The Tarbell Group, LLC v. Adams Community Economic Development Corporation, et al.*
Defendants' PPP Loans

| Name | Type | Loan No. | Draw | Date Eligible | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|---|---|---|---|
| Adams Community Economic Development Corporation | 501(c)(6) | 1927377403 | 1st | 12/27/2020 | 5/5/2020 | $16,460.00 | 12/17/2020 | $16,562.88 |
| Agribusiness Association of Iowa | 501(c)(5) | 9145878300 | 1st | 3/11/2021 | 1/30/2021 | $171,017.00 | 7/8/2021 | $171,743.82 |
| Agribusiness Association of Iowa | 501(c)(5) | 7274639008 | 2nd | 3/11/2021 | 5/25/2021 | $166,664.00 | 8/30/2021 | $140,656.91 |
| Ames Golf and Country Club | 501(c)(7) | 5294107008 | 1st | 3/11/2021 | 4/5/2020 | $135,570.00 | 12/2/2020 | $127,508.46 |
| Ames Golf and Country Club | 501(c)(7) | 1467898705 | 2nd | 3/11/2021 | 3/27/2021 | $126,692.00 | 7/13/2021 | $127,047.44 |
| Appanoose Country Club | 501(c)(7) | 6876347004 | 1st | 3/11/2021 | 4/7/2020 | $12,430.00 | 10/13/2020 | $12,492.84 |
| Appanoose Country Club | 501(c)(7) | 1220928307 | 2nd | 3/11/2021 | 1/16/2021 | $12,050.00 | 6/23/2021 | $12,100.88 |
| Aspen Grove Cemetery Association | 501(c)(13) | 9235017003 | 1st | 3/11/2021 | 4/9/2020 | $73,427.50 | 11/27/2020 | $73,863.48 |
| Aspen Grove Cemetery Association | 501(c)(13) | 6661388309 | 2nd | 3/11/2021 | 1/27/2021 | $73,427.00 | 7/16/2021 | $73,767.62 |
| Atlantic Golf & Country Club | 501(c)(7) | 8349707002 | 1st | 3/11/2021 | 4/8/2020 | $67,142.00 | 10/20/2020 | $67,487.83 |
| Audubon Golf and Country Club | 501(c)(7) | 9067467107 | 1st | 3/11/2021 | 4/15/2020 | $14,300.00 | 12/31/2020 | $14,402.09 |
| Audubon Golf and Country Club | 501(c)(7) | 7783678403 | 2nd | 3/11/2021 | 2/12/2021 | $14,300.00 | 9/9/2021 | $14,379.84 |

*United States of America ex rel. The Tarbell Group, LLC v. Adams Community Economic Development Corporation, et al.*
Defendants' PPP Loans

| Name | Type | Loan No. | Draw | Date Eligible | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|---|---|---|---|
| Bloomfield Country Club | 501(c)(7) | 8376417200 | 1st | 3/11/2021 | 4/28/2020 | $6,100.00 | 2/16/2021 | $6,130.78 |
| Bloomfield Country Club | 501(c)(7) | 2858068302 | 2nd | 3/11/2021 | 1/21/2021 | $6,100.00 | 6/15/2021 | $6,123.72 |
| Brotherhood Of Locomotive Engineers Gene | 501(c)(5) | 7396307706 | 1st | 3/11/2021 | 5/1/2020 | $60,556.00 | 11/23/2020 | $60,892.42 |
| Centerville Chamber of Commerce | 501(c)(6) | 6270617400 | 1st | 12/27/2020 | 5/14/2020 | $39,346.47 | 11/12/2020 | $39,542.11 |
| Centerville Chamber of Commerce | 501(c)(6) | 7884388409 | 2nd | 12/27/2020 | 2/12/2021 | $43,355.00 | 7/16/2021 | $43,533.24 |
| Columbus Club Inc. | 501(c)(7) | 2106617400 | 1st | 3/11/2021 | 5/5/2020 | $8,947.50 | 11/2/2020 | $8,990.89 |
| Columbus Club Inc. | 501(c)(7) | 5816868410 | 2nd | 3/11/2021 | 2/9/2021 | $11,456.51 | 6/23/2021 | $11,497.63 |
| Crestmoor Golf Club Inc. | 501(c)(7) | 7638737209 | 1st | 3/11/2021 | 4/28/2020 | $8,500.00 | 12/16/2020 | $8,552.89 |
| The Des Moines Embassy Club | 501(c)(7) | 2604247105 | 1st | 3/11/2021 | 4/11/2020 | $376,700.00 | 5/20/2021 | $380,797.26 |
| The Des Moines Embassy Club | 501(c)(7) | 3704938501 | 2nd | 3/11/2021 | 2/24/2021 | $538,164.00 | 10/25/2021 | $541,628.89 |
| Fraternal Order of Eagles—Aerie 3876 | 501(c)(8) | 2941068205 | 1st | 3/11/2021 | 8/3/2020 | $4,320.00 | 12/31/2020 | $4,337.76 |
| Fraternal Order of Eagles—Aerie 3876 | 501(c)(8) | 7765048507 | 2nd | 3/11/2021 | 3/6/2021 | $6,048.00 | 8/11/2021 | $6,074.04 |
| Geneva Golf & Country Club | 501(c)(7) | 5386867010 | 1st | 3/11/2021 | 4/5/2020 | $106,507.85 | 1/7/2021 | $107,309.62 |

*United States of America ex rel. The Tarbell Group, LLC v. Adams Community Economic Development Corporation, et al.*
Defendants' PPP Loans

| Name | Type | Loan No. | Draw | Date Eligible | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|---|---|---|---|
| Geneva Golf & Country Club | 501(c)(7) | 1063288300 | 2nd | 3/11/2021 | 1/16/2021 | $106,507.85 | 8/25/2021 | $107,149.86 |
| Green Acres Club | 501(c)(7) | 3064587203 | 1st | 3/11/2021 | 4/16/2020 | $13,400.00 | 11/23/2020 | $13,481.14 |
| Happy Hollow Country Club | 501(c)(7) | 8863787410 | 1st | 3/11/2021 | 5/19/2020 | $13,620.00 | 1/11/2021 | $13,708.53 |
| Happy Hollow Country Club | 501(c)(7) | 2645498407 | 2nd | 3/11/2021 | 2/3/2021 | $14,454.37 | 7/20/2021 | $14,521.02 |
| International Union of Painters and Allied Trades District Council | 501(c)(5) | 6507798000 | 1st | 3/11/2021 | 6/30/2020 | $51,925.00 | 4/29/2021 | $52,340.40 |
| Iowa Turkey Federation Inc. | 501(c)(5) | 5818407300 | 1st | 3/11/2021 | 4/30/2020 | $26,976.00 | 11/23/2020 | $27,128.11 |
| Iowa Turkey Federation Inc. | 501(c)(5) | 8541348400 | 2nd | 3/11/2021 | 2/13/2021 | $30,392.00 | 7/27/2021 | $30,527.08 |
| KYC Inc. | 501(c)(7) | 6664557910 | 1st | 3/11/2021 | 6/16/2020 | $17,500.00 | 6/17/2021 | $17,674.52 |
| KYC Inc. | 501(c)(7) | 8418738502 | 2nd | 3/11/2021 | 3/9/2021 | $26,500.00 | 12/29/2021 | $26,712.00 |
| Kalona Area Chamber of Commerce Inc. | 501(c)(6) | 8163527205 | 1st | 12/27/2020 | 4/28/2020 | $4,590.49 | 11/12/2020 | $4,615.48 |
| LakeView Golf & Country Club | 501(c)(7) | 6091677107 | 1st | 3/11/2021 | 4/14/2020 | $14,417.00 | 12/10/2020 | $14,509.51 |
| Lakeshore Golf and Country Club | 501(c)(7) | 6018997102 | 1st | 3/11/2021 | 4/14/2020 | $4,900.00 | 2/16/2021 | $4,938.46 |
| Lakeshore Golf and Country Club | 501(c)(7) | 7611758407 | 2nd | 3/11/2021 | 2/12/2021 | $4,900.00 | 6/15/2021 | $4,915.93 |
| Lakeview Country Club of Madison County Iowa Inc. | 501(c)(7) | 9469417008 | 1st | 3/11/2021 | 4/9/2020 | $9,770.00 | 11/23/2020 | $9,828.89 |

*United States of America ex rel. The Tarbell Group, LLC v. Adams Community Economic Development Corporation, et al.*
Defendants' PPP Loans

| Name | Type | Loan No. | Draw | Date Eligible | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|---|---|---|---|
| Logan Missouri Valley Country Club | 501(c)(7) | 6235627005 | 1st | 3/11/2021 | 4/6/2020 | $25,090.00 | 11/2/2020 | $25,227.30 |
| Mechanical Contractors Association of Iowa Inc. | 501(c)(6) | 3941357708 | 1st | 12/27/2020 | 5/1/2020 | $65,137.00 | 4/1/2021 | $65,722.34 |
| Muscatine County Fair | 501(c)(5) | 9480747003 | 1st | 3/11/2021 | 4/9/2020 | $12,800.00 | 10/20/2020 | $12,866.13 |
| Muscatine County Fair | 501(c)(5) | 6880118309 | 2nd | 3/11/2021 | 1/27/2021 | $15,180.00 | 9/16/2021 | $15,274.45 |
| Muscatine Mutual Insurance Association | 501(c)(15) | 3163857305 | 1st | 3/11/2021 | 4/29/2020 | $25,882.50 | 11/5/2020 | $26,018.38 |
| Oakdale Memorial Gardens Inc. | 501(c)(13) | 4499727201 | 1st | 3/11/2021 | 4/27/2020 | $31,600.00 | 12/8/2020 | $31,791.33 |
| Oakdale Memorial Gardens Inc. | 501(c)(13) | 6952928305 | 2nd | 3/11/2021 | 1/27/2021 | $31,600.00 | 6/15/2021 | $31,717.74 |
| The Outing Club | 501(c)(7) | 8866147009 | 1st | 3/11/2021 | 4/9/2020 | $150,000.00 | 4/29/2021 | $151,545.21 |
| Pine Knolls Company dba Pine Knolls Golf Club | 501(c)(7) | 7637357102 | 1st | 3/11/2021 | 4/14/2020 | $15,792.50 | 11/2/2020 | $15,876.29 |
| The Red Oak Country Club | 501(c)(7) | 5258657001 | 1st | 3/11/2021 | 4/5/2020 | $40,600.00 | 10/13/2020 | $40,808.64 |
| The Red Oak Country Club | 501(c)(7) | 1168538310 | 2nd | 3/11/2021 | 1/16/2021 | $40,687.00 | 7/27/2021 | $40,898.35 |
| Sigma Lambda Beta International Fraternity | 501(c)(7) | 3199208002 | 1st | 3/11/2021 | 6/24/2020 | $54,100.00 | 5/20/2021 | $54,591.41 |
| Sigma Lambda Beta International Fraternity | 501(c)(7) | 8164138607 | 2nd | 3/11/2021 | 3/24/2021 | $46,847.00 | 8/4/2021 | $47,017.47 |
| Treynor Recreation Area | 501(c)(7) | 1233787207 | 1st | 3/11/2021 | 4/15/2020 | $13,697.00 | 11/25/2020 | $13,779.56 |

*United States of America ex rel. The Tarbell Group, LLC v. Adams Community Economic Development Corporation, et al.*
Defendants' PPP Loans

| Name | Type | Loan No. | Draw | Date Eligible | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|---|---|---|---|
| Urbandale Golf and Country Club | 501(c)(7) | 8418167000 | 1st | 3/11/2021 | 4/8/2020 | $108,000.00 | 1/7/2021 | $108,798.00 |
| Washington Golf & Country Club | 501(c)(7) | 4656067002 | 1st | 3/11/2021 | 4/4/2020 | $19,200.00 | 1/7/2021 | $19,342.93 |
| West Liberty Golf and Country Club | 501(c)(7) | 1428017210 | 1st | 3/11/2021 | 4/15/2020 | $35,900.00 | 1/12/2021 | $36,162.27 |

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration (collectively, the "United States"), Allstar Health Providers, Inc. ("Allstar"), Maria Chua, and Bryan Quesenberry ("Quesenberry" or "Relator") (collectively referred to as "the Parties") through their authorized representatives.

## RECITALS

A. Allstar is a corporation organized under the laws of California and located at 10722 Arrow Route, Suite 218, Rancho Cucamonga, CA 91730. Allstar operates a home health agency. Maria Chua is the co-owner of Allstar.

B. On September 10, 2020, Bryan Quesenberry filed a *qui tam* action in the United States District Court for the Central District of California captioned *U.S. ex rel. Quesenberry v. 2 Evil Geniuses, et al.,* Dkt. No. 20-cv-8497 pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleges that Allstar unlawfully applied for and received two loans under the Paycheck Protection Program ("PPP") prior to December 31, 2020, and falsely certified, in the submitted applications for the PPP loans, that it would receive only one PPP loan prior to December 31, 2020.

C. The PPP was established pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act, which was enacted in March 2020, was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for employee payroll and certain other expenses, through the PPP. To obtain a PPP loan, a qualifying business was required to submit a

PPP loan application, which is signed by an authorized representative of the business. The loan application requires the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan. PPP loan applications were processed by participating lenders, which received processing fees from SBA. Following the approvals of loan applications, the participating lenders funded the loan, which were 100% guaranteed by the SBA.

D. The United States contends that it has certain civil claims against Allstar and Maria Chua for engaging in the following conduct, hereinafter referred to as the "Covered Conduct":

> The United States contends that, in May 2020, Allstar, through Chua, submitted an application for a PPP loan to "Lender 1." In that application, Allstar certified that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the [PPP]." Subsequently, Allstar entered into a promissory note by which Lender 1 agreed to lend $226,459 to Allstar pursuant to the PPP (the "Lender 1 PPP Loan"), and Allstar received the Lender 1 PPP Loan proceeds by electronic transfer.
>
> The United States further contends that, in May 2020, while Allstars's loan application to Lender 1 was still pending, Allstar submitted an application for a PPP loan to "Lender 2." In that application, Allstar stated that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the [PPP]." Subsequently, Allstar entered into a promissory note by which Lender 2 agreed to lend $199,995 to Allstar pursuant to the PPP (the "Lender 2 PPP Loan"), and Allstar received the Lender 2 PPP Loan funds by electronic transfer.
>
> The United States contends that, after receiving both the Lender 1 PPP Loan funds and the Lender 2 PPP Loan funds, Allstar knowingly and improperly retained the funds obtained from both loans, contrary to the express certifications that Allstar made that Allstar would not receive more than one PPP loan prior to December 31, 2020. The United States further contends that, despite knowing that it should not have received more than one PPP loan prior to December 31, 2020, Allstar (1) applied for and received forgiveness for the Lender 1 PPP Loan from SBA and (2) failed to repay the Lender 2 PPP Loan, causing Lender 2 to charge off the loan and SBA to purchase the Lender 2 PPP Loan pursuant to its guaranty.

E. The United States contends that it has certain civil claims against Allstar and Maria Chua for violations of the False Claims Act, 31 U.S.C. § 3729-3733 ("FCA").

F. Relator claims entitlement to a share of the proceeds of this Settlement Agreement under 31 U.S.C. § 3730(d).

G. This Settlement Agreement is neither an admission of liability by Allstar or Maria Chua nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

**TERMS AND CONDITIONS**

1. Allstar and Maria Chua shall pay to the United States $399,990 ("Settlement Amount"), of which $199,955 is restitution. Allstar and Maria Chua agree that they are jointly and severally liable for the Settlement Amount, which shall be paid by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Central District of California no later than 30 days after the date of this Agreement.

2. In the event that Allstar and Maria Chua fail to complete the payment set forth in Paragraph 1 by the date upon which it is due, Allstar and Maria Chua shall be in Default of their payment obligations ("Default"). Upon Default, the United States will provide Allstar and Maria Chua, through their legal counsel or other representative previously designated by Allstar and Maria Chua, by electronic mail a written Notice of Default, and Allstar and Maria Chua shall have an opportunity to cure such Default within ten business days from the date the Notice of Default is sent by counsel for the United States. If Allstar and Maria Chua fail to cure the Default within ten business days from the date the Notice of Default is sent by the United States

and in the absence of an agreement with the United States to a modified payment schedule, the difference between the amount paid by Allstar and Maria Chua under Paragraph 1 and $399,990 shall become immediately due and payable, and interest on such amount shall accrue at the rate of 10 percent per annum, compounded daily from the date of Default.

3. Upon execution of this Settlement Agreement, Allstar and Maria Chua shall enter into a Consent Judgment with the United States in the form attached as Attachment A. The United States shall not file the Consent Judgment unless Allstar and Maria Chua are in uncured Default as defined above. Allstar and Maria Chua agree not to contest any Consent Judgment and/or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States. At its sole option, in the event of uncured Default as defined above, the United States alternatively may rescind this Agreement as to Allstar and Maria Chua and bring any civil and/or administrative claim, action, or proceeding against Allstar and Maria Chua for the claims that would otherwise be covered by the releases provided herein. If the United States opts to rescind this Agreement in the event of uncured Default as defined above, Allstar and Maria Chua agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a) filed by the United States against Allstar and Maria Chua, within 180 days of written notification to Allstar and Maria Chua that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the particular date when the Civil Action referenced in Recital Paragraph D was filed.

4. Conditioned upon the United States receiving the payment set forth in Paragraph 1, the United States shall pay to Relator $59,998.50 by electronic funds transfer

("Relator's Share"). No other relator share payments shall be made under this Agreement.

5. Subject to the exceptions in Paragraph 7 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Allstar and Maria Chua from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. Subject to the exceptions in Paragraph 7 below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Allstar and Maria Chua from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729–3733.

7. Notwithstanding the releases given in Paragraph 5 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including the suspension and debarment rights of any federal agency;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement; and

f. Any liability of individuals, except Maria Chua.

8. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Maria Chua, Allstar, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

10. Allstar and Maria Chua waive and shall not assert any defenses Allstar and Maria Chua may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11. Allstar and Maria Chua fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Allstar and Maria Chua have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers,

agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

12. Allstar and Maria Chua fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Allstar and Maria Chua have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

13. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Allstar, Maria Chua, and Allstar's present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Allstar and Maria Chua's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Allstar and Maria Chua make to the United States pursuant to this Agreement and any payments that Allstar and Maria Chua may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Allstar and Maria Chua, and Allstar and Maria Chua shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Allstar and Maria Chua shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Allstar or any of its subsidiaries or affiliates, and Maria Chua, from the United States. Allstar and Maria Chua agree that the United States, at a minimum, shall be entitled to recoup from Allstar and Maria Chua any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Allstar and Maria Chua's books and records and to disagree with any calculations submitted by Allstar or any of its subsidiaries or affiliates, and Maria Chua, regarding any Unallowable Costs included in payments previously sought by Allstar and Maria Chua, or the effect of any such Unallowable Costs on the amount of such payments.

14. This Agreement is intended to be for the benefit of the Parties only.

15. Upon receipt of the payment described in Paragraph 1, above, Relator and the United States shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of all claims against Allstar in the Civil Action pursuant to Rule 41(a)(1)(A). Such dismissal shall

be: (a) with prejudice to the Relator as to all claims against Allstar in the Civil Action; (b) with prejudice to the United States as to the Covered Conduct; and (c) without prejudice to the United States as to all other claims or allegations against Allstar in the Civil Action.

16. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Central District of California. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Allstar's successors, transferees, heirs, and assigns, and Maria Chua.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

THE UNITED STATES OF AMERICA

Dated: the 9th day of October, 2024

By: *Jared S. Wiesner*
Jared S. Wiesner
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

Dated: the 9th day of October, 2024

By: *Frank Kortum*
Frank D. Kortum
Assistant United States Attorney
United States Attorney's Office for the Central District of California

*Attorneys for United States of America*

ALLSTAR HEALTH PROVIDERS, INC. AND MARIA CHUA

Dated: the 7th day of October, 2024

By: ______________________
Maria Chua

*On behalf of herself and Allstar Health Providers, Inc.*

APPROVED AS TO FORM

Dated: the 7th day of October, 2024

By: ______________________
Behzad Vahidi
V&R LAW GROUP LLP

*Attorney for Allstar Health Providers, Inc. and Maria Chua*

RELATOR – BRYAN QUESENBERRY

Dated: the 8 day of October, 2024

By: [signature]

Bryan Quesenberry
Relator

# Attachment A

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* BRYAN QUESENBERRY<br><br>Plaintiff/Relator,<br><br>v.<br><br>ALLSTAR HEALTH PROVIDERS, INC.;<br>and MARIA CHUA<br><br>Defendants. | No.: CV 20-08497 (ASx) |

CONSENT JUDGMENT

Plaintiff United States of America (the "United States"); Defendant Allstar Health Providers, Inc.; and Defendant Maria Chua (collectively referred as the "Parties"), hereby stipulate, agree and consent to the entry of this judgment based upon the following uncontested allegations:

1. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1345, 1367(a). Allstar Health Providers, Inc., and Maria Chua consent to the jurisdiction of the United States District Court for the Central District of California for the resolution of this dispute.

2. On the ___ day of October, 2024, Defendants Allstar Health Providers, Inc., and Maria Chua entered into a Settlement Agreement with Plaintiff United States for the purpose of resolving a dispute (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit 1 and incorporated by reference herein.

3. Under the terms of the Settlement Agreement, Allstar Health Providers, Inc., and Maria Chua agreed to pay to the United States the sum of $399,990 ("Settlement Amount"). Allstar Health Providers, Inc., and Maria Chua further agreed that they are jointly and severally liable for the Settlement Amount.

4. Also under the terms of the Settlement Agreement, Allstar Health Providers, Inc., and Maria Chua agreed that in the event they defaulted and failed to pay the Settlement Amount, within ten (10) business days of the date the Notice of Default is sent by counsel for the United States, the United States may file a Consent Judgment against Allstar Health Providers, Inc., and Maria Chua, jointly and severally, in the amount of the unpaid balance of the Settlement Amount.

5. Allstar Health Providers, Inc., and Maria Chua now failed to make payment in accordance with the Settlement Agreement, and therefore are in default under the terms of the Settlement Agreement.

6. Unless it has already done so, within a reasonable time after the filing of this Consent Judgment, the United States will file a statement of debt showing the amount due and owing under the Settlement Agreement as of the date of default.

7. The United States has given Allstar Health Providers, Inc., and Maria Chua written notice of default under the terms of the Settlement Agreement, and demanded that Allstar Health Providers, Inc., and Maria Chua cure that default by tendering payment in full on the cure amount under the terms of the Settlement Agreement. The United States has given Allstar Health Providers, Inc., and Maria Chua ten (10) business days to cure the default, as provided in the Settlement Agreement, but

Allstar Health Providers, Inc., and Maria Chua failed to respond or to make arrangements to comply with the terms of the Settlement Agreement.

ACCORDINGLY, THIS COURT enters judgment for the United States against Defendants Allstar Health Providers, Inc., and Maria Chua, jointly and severally, in the amount of $____________________, plus interest at the post-judgment interest at the rate of 10% per annum, compounded daily from the date this Consent Judgment is entered until it is satisfied. This Court retains jurisdiction over this action.

DONE AND ORDERED in the Central District of California this ___ day of __________, 202_.

______________________________
UNITED STATES DISTRICT JUDGE

Consent to File

Behzad Vahidi, counsel for Allstar Health Providers, Inc., and Maria Chua, have consented to the undersigned Assistant United States Attorney's electronic filing of this Consent Judgement.

The parties hereby stipulate and agree to the entry of this Consent Judgment.

Dated: the 9th day of October, 2024

By: Frank Kortum
Frank D. Kortum
Assistant United States Attorney
United States Attorney's Office for the Central District of California

*Attorney for United States of America*

Dated: the 7th day of October, 2024

By: ______________________
Behzad Vahidi
Y&R LAW GROUP LLP

*Attorney for Allstar Health Providers, Inc., and Maria Chua*

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Small Business Administration, (collectively, the "United States"), the Seminole County Board of Education (the "Defendant"), and Relator Bryan J. Quesenberry ("Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

RECITALS

A. Defendant is an elected government entity that administers the Seminole County School District in Seminole County, Georgia.

B. On July 31, 2023, Relator filed a qui tam action in the United States District Court for the Middle District of Georgia captioned *United States ex rel. J. Bryan Quesenberry v. Miller County Board of Education and Seminole County Board of Education*, 1:23-cv-118, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

C. The United States contends that it has certain civil claims against Defendant arising from Defendant's application for and receipt of a Paycheck Protection Program loan in June 2020. That conduct is referred to below as the Covered Conduct.

D. This Agreement is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

E. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendant shall pay to the United States **$1,714,360.00** ("Settlement Amount"), $857,180.00 of which is considered restitution, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Georgia no later than 14 days after the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $257,154.00 to Relator by electronic funds transfer ("Relator's Share").

3. Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Defendant from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5 below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendant and Defendant's officers,

agents, and employees from any civil monetary claim Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5. Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability of individuals.

6. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally releases, waives, and forever discharges the United States, its agencies, officers, agents, employees, and servants from

any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7. Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendant and Defendant's officers, agents, and employees from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

8. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendant, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Defendant makes to the United States pursuant to this Agreement and any payments that Defendant may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendant shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendant or any of its subsidiaries or affiliates from the United States. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department

of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendant's books and records and to disagree with any calculations submitted by Defendant or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendant, or the effect of any such Unallowable Costs on the amount of such payments.

11. Defendant agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendant shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendant further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

12. This Agreement is intended to be for the benefit of the Parties only.

13. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Georgia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

21. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 4/11/24 BY: [signature]
W. TAYLOR MCNEILL
Assistant United States Attorney
Middle District of Georgia

**SEMINOLE COUNTY BOARD OF EDUCATION - DEFENDANT**

DATED: ________ BY: ____________________
Authorized Representative of Seminole County
Board of Education

DATED: ________ BY: ____________________
BILLY M. GRANTHAM
Counsel for Defendant

**J. BRYAN QUESENBERRY - RELATOR**

DATED: ________ BY: ____________________
J. BRYAN QUESENBERRY
Relator

**THE UNITED STATES OF AMERICA**

DATED: __________ BY: ______________________________
W. TAYLOR MCNEILL
Assistant United States Attorney
Middle District of Georgia

**SEMINOLE COUNTY BOARD OF EDUCATION - DEFENDANT**

DATED: 3/27/24 BY: ______________________________
Authorized Representative of Seminole County
Board of Education

DATED: 3/27/2024 BY: Billy M. Grantham
BILLY M. GRANTHAM
Counsel for Defendant

**J. BRYAN QUESENBERRY - RELATOR**

DATED: __________ BY: ______________________________
J. BRYAN QUESENBERRY
Relator

**THE UNITED STATES OF AMERICA**

DATED: __________ BY: ______________________________

W. TAYLOR MCNEILL
Assistant United States Attorney
Middle District of Georgia

**SEMINOLE COUNTY BOARD OF EDUCATION - DEFENDANT**

DATED: __________ BY: ______________________________

Authorized Representative of Seminole County
Board of Education

DATED: __________ BY: ______________________________

BILLY M. GRANTHAM
Counsel for Defendant

**J. BRYAN QUESENBERRY - RELATOR**

DATED: 3/13/24 BY: ______________________________

J. BRYAN QUESENBERRY
Relator

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among (i) the United States of America, acting through the Department of Justice and on behalf of the Small Business Administration ("SBA"); (ii) Third Way (the "Organization"); and (iii) The Tarbell Group, LLC ("Relator") (the United States, the Organization, and Relator each a "Party" and collectively the "Parties"), through their authorized representatives arising from the action filed by Relator captioned, *United States ex rel. Tarbell Group, LLC v. Third Way*, Civ. A. No. 24-1816 (RJL) (D.D.C.) (the "Civil Action").

## RECITALS

A. Relator commenced a civil action against the Organization and other defendants under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729–3733.

B. The United States contends that it has certain civil and administrative claims against the Organization arising from the following alleged conduct. The actions, transactions, occurrences, allegations, and contentions set forth in this Paragraph B are herein collectively referred to as the "Covered Conduct."

i. The Organization applied for and received in 2020 a first draw loan (SBA No. 6311927102) in the amount of $974,771.00 under the Paycheck Protection Program ("PPP"), a program created by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and administered by SBA.

ii. The Organization subsequently applied for and received forgiveness of the first draw loan in the amount, including interest, of $982,061.75

iii. In each of its applications for a PPP loan and for forgiveness of the loan, the Organization certified or represented that it was eligible to receive a PPP loan and forgiveness of a PPP loan under the statutes, regulations, and rules in effect at the time of

its application implementing the Paycheck Protection Program under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and/or the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

iv. The Organization was a Section 501(c)(4) non-profit organization at the time of its applications for the PPP loan and forgiveness of that loan.

v. Section 501(c)(4) non-profit organizations were not eligible for PPP loans or for forgiveness of PPP loans.

vi. The United States contends that the Organization's representations, statements, or certifications relating to its qualification for the PPP loan and forgiveness of that loan were false.

vii. The Organization contends that:

a. Section 501(c)(3) organizations were eligible for PPP loans, and the relevant PPP regulations did not specifically address the eligibility of organizations with related Section 501(c)(4) and Section 501(c)(3) entities.

b. The Organization has a related organization that is a Section 501(c)(3) entity, and the PPP loan the Organization received funded employee payroll for Section 501(c)(3)-compliant activities.

c. The Organization believed it was eligible for the PPP loan when it applied for both the loan and forgiveness of the loan, and therefore did not make any knowingly false representations, statements, or certifications.

C. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

D. This Agreement is made in compromise of disputed claims. This Agreement is not an admission of facts or liability by the Organization, which denies that it violated the False Claims Act, nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows.

## TERMS AND CONDITIONS

1. The Organization shall pay to the United States the total sum of one million nine hundred forty-nine thousand, five hundred forty-two dollars ($1,949,542.00) (the "Settlement Amount"), of which one million eleven thousand, three hundred four dollars and eighty-eight cents ($1,011,304.88) is restitution, within thirty (30) days after the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay one hundred fifty-five thousand, nine hundred sixty-three dollars and thirty-six cents ($155,963.36) to Relator by electronic funds transfer ("Relator's Share") pursuant to instructions to be provided by the undersigned Relator's counsel.

3. Within 10 days after the Effective Date of this Agreement, the Organization shall pay to Relator $1,480.32 ("Fees Payment") using instructions to be provided by Relator's counsel as full and complete payment of Relator's attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d).

4. Subject to the exceptions in Paragraph 6(e), and upon the Relator's receipt of the Relator's Share, Relator, for themselves and for their heirs, successors, attorneys, agents, and assigns, release the Organization and its current and former owners, directors, officers, employees, agents, and assigns from any and all claims Relator has asserted, could have asserted, or may assert

in the future related to the Covered Conduct, Relator's complaint(s) filed in the Civil Action, or Relator's investigation or prosecution thereof.

5. Subject to the exceptions in Paragraph 6 below (concerning excluded claims), and conditioned upon the Organization's full payment of the Settlement Amount, the United States releases the Organization from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or common law theories of breach of contract, payment by mistake, unjust enrichment, negligent misrepresentation, or fraud.

6. Notwithstanding the releases given in Paragraph 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Any administrative liability (except administrative monetary claims noted in Paragraph 5), including the suspension and debarment rights of any federal agency;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability of individuals;

g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h. Any liability for failure to deliver goods or services due; and

i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7. Relator and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and the Civil Action.

8. Conditioned on Relator's receipt of the Fees Payment, Relator, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release the Organization, and any officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9. The Organization waives and shall not assert any defenses the Organization may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution, or administrative action.

10. The Organization fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney fees, costs, and expenses of every kind and however denominated) that the Organization has asserted, could have asserted, or

may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11. The Organization fully and finally releases Relator, their attorneys, and their respective heirs, successors, assigns and agents, for all time and to the fullest extent allowed by law, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Organization has asserted, could have asserted, or may assert in the future against Relator related to the Covered Conduct or the investigation and prosecution of the Civil Action.

12. The Organization agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the Organization, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) The matters covered by this Agreement;

(2) The United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) The Organization's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) The negotiation and performance of this Agreement; and/or

(5) The payments the Organization makes to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by the Organization, and the Organization shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, the Organization shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by the Organization or any of its subsidiaries or affiliates from the United States. The Organization agrees that the United States, at a minimum, shall be entitled to recoup from the Organization any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine the Organization's books and records and to disagree with any calculations submitted by the Organization or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by the Organization, or the effect of any such Unallowable Costs on the amount of such payments.

13. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as otherwise expressly provided herein.

15. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States.

17. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Columbia unless that Court determines that venue or jurisdiction is lacking over any such dispute.

18. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties.

20. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned signatories represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement is binding on the Organization's successors, transferees, heirs, and assigns.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date" of this Agreement).

26. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27. Facsimiles of signatures and electronic signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<REMAINDER OF PAGE LEFT BLANK; SIGNATURE PAGES TO FOLLOW>

**FOR THE UNITED STATES OF AMERICA:**

DATED: __________ BY: ______________________________

SEAN M. TEPE
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

**FOR ORGANIZATION:**

DATED: 9/3/25 BY: ____________________

Jonathan Cowan
President
Third Way

DATED: 09/03/25 BY: ____________________

Amanda Santella
O'Melveny & Myers LLP
Counsel for Third Way

**FOR RELATOR:**

DATED: Aug. 22, 2025 BY: *[signature]*

Bruce Ellis Fein
Law Office of Bruce Ellis Fein, PLLC
Attorney for The Tarbell Group, LLC