**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. THE TARBELL GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ADAMS COMMUNITY ECONOMIC DEVELOPMENT CORPORATION, et al.,<br><br>Defendants. | **CASE NO: 4:25-CV-119-SHL-SBJ**<br><br>**DEFENDANTS COLUMBUS CLUB INC., THE DES MOINES EMBASSY CLUB, AND WASHINGTON GOLF & COUNTRY CLUB'S REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** |

**COME NOW** Defendants Columbus Club Inc.,[1] The Des Moines Embassy Club, and Washington Golf & Country Club, by and through undersigned counsel, and respectfully submit this Reply Brief in Support of Dismissal of the First Amended Complaint ("FAC").

## I. The Media and Earlier Qui Tam Suits Disclosed Substantially the Same Allegations.

### A. The statute does not require a disclosure that names each defendant.

The Tarbell Group's ("Relator") public-disclosure response rests on one premise: that the bar applies only if a public source "mentions any defendant in connection with its PPP eligibility." Dkt. 141 at 10; *see also* at 8–11. The statute says otherwise. It asks whether "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," including "from the news media." 31 U.S.C. § 3730(e)(4)(A). "The Supreme Court has repeatedly observed that the text of the public disclosure bar applies with a 'broad sweep' to the forum in which the disclosure occurs, and that the phrase 'allegations or transactions' is 'wide-reaching.'" *United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 803 (N.D. Cal. 2014) (citations omitted). The disclosed facts "need not be identical with, but only substantially similar to, the

[1] Columbus Club, Inc. filed its Joinder to the Motions to Dismiss (Dkts. 128–135) on October 14, 2026. *See* Dkt. 151.

relator's allegations," and the disclosure "need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571, 573 (9th Cir. 2016) (citation omitted).

The Eighth Circuit asks whether "the essential elements comprising [the] fraudulent transaction have been publicly disclosed so as to raise a reasonable inference of fraud." *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1188 (8th Cir. 2010) (citation omitted). The public disclosure bar warrants dismissal of the suit at *this* stage, not summary judgment. *See* Dkt. 141 at 16. There is nothing further to develop—Relator is not the "original source" and obtained information from publicly-available sources. Its theory is categorical: a 501(c)(7) club that took a PPP loan certified eligibility it lacked. Every member of the category was identifiable from the SBA loan data on which the FAC relies. Dkt. 128-1 at 12–18. Matching names to a theory and regurgitating public information adds nothing substantive.

**B. The news media widely reported that these clubs claimed PPP loans.**

Relator filed its action on April 1, 2025. Prior to that date, there were numerous news media reports alleging that certain non-profit entities, such as 501(c)(7) entities, applied for and received PPP loans even though the entities did not qualify for PPP loans. That is, prior to Relator filing its complaint, "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . from the news media." 31 U.S.C. § 3730(e)(4).

Below is a sampling of news media reports that publicly disclosed substantially the same allegations or transactions as alleged in Relator's Complaint and *before* the Complaint was filed.[2] On July 18, 2020, the St. Louis Business Journal published "These St. Louis country clubs got PPP

[2] This Court may take judicial notice of the following information, all of which qualifies as information in the news media for purposes of the Public Disclosure Bar. *See* Fed. R. Evid. 201; *Klossner v. IADU Table Mound MHP, LLC*, 565 F.Supp.3d 1118, 1123 (N.D. Iowa 2021) ("Courts may properly take judicial notice of newspapers and other publications as evidence of what was in the public realm at the time.").

loan approvals. Here's why they were the few that could."[3] That article states that "thousands of country clubs and social clubs found themselves ineligible for the PPP program because of their status as tax-exempt 501(c)7 organizations, which were not able to apply for the forgivable loans."

On September 6, 2020, the Honolulu Star Advertiser published "Some Hawaii social clubs usurp paycheck protection loans."[4] On December 19, 2023, WLRM Public Media published "Dozens of Florida country Clubs and HOA's are being sued over alleged PPP fraud."[5] That article explains similar lawsuits that were filed under the FCA by a relator on the basis that "[d]efendants knowingly told the SBA and participating lenders that they were qualified entities to receive PPP loans, even though they are all not-for-profit homeowners associations, condominium associations, or country clubs that do not qualify as qualified entities under Congress's act."

On February 9, 2024, Law 360 published "HOAs in Crosshairs of 'Serial Relators' For Alleged PPP Fraud."[6] That article starts with the following:

> *Law360 (February 9, 2024, 6:12 PM EST)* -- A series of whistleblower lawsuits accusing scores of homeowner associations and other organizations of illegally receiving Paycheck Protection Program funds has netted a handful of settlements, and one expert says cases are becoming more commonplace.

---

[3] https://www.ksdk.com/article/news/local/business-journal/st-louis-country-clubs-got-ppp-loan-approvals/63-517c25b0-298f-4037-9c06-f689aabb8402 (last visited October 14, 2026).

[4] https://www.staradvertiser.com/2020/09/06/hawaii-news/hawaii-social-clubs-improperly-use-loans/ (last visited October 14, 2026). The article states that:

> More than 25,000 Hawaii businesses and nonprofit organizations received forgivable federal Paycheck Protection Program loans earlier this year — but at least a few shouldn't have.
> Some private social clubs in Hawaii with golf, yacht, pool and dining facilities established to benefit members received PPP loans despite not being eligible.
> . . .
> The U.S. Small Business Administration established PPP at the direction of Congress under rules that excluded social clubs with 501(c)7 nonprofit designations while allowing participation by 501(c)3 charitable organizations that can include hospitals, schools and churches.

[5] https://www.wlrn.org/law-justice/2023-12-19/dozens-of-florida-country-clubs-and-hoas-are-being-sued-over-alleged-ppp-fraud (last visited October 14, 2026).

[6] https://www.crowell.com/a/web/3sMWtaHFjoeUWiV9xtJJG/hoas-in-crosshairs-of-serial-relators-for-alleged-ppp-fraud.pdf (last visited October 14, 2026).

It then goes on to describe lawsuits involving other 501(c)(7) nonprofit entities to which the relator alleged that the Clubs violated the FCA.[7]

On January 15, 2025, Brown LLC published "Nonprofit Organizations Settle $5.8M Allegations of PPP Loan Fraud."[8] That article provides "Details of the Alleged PPP Loan Fraud Violations and PPP Settlements" including two 501(c)(7) nonprofit entities. There can be no question that each of these articles are considered publicly disclosed by the "news media" prior to Relator filing its suit on April 1, 2025. Armed with these publicly available news media reports of purported PPP loan fraud committed by 501(c)(7) nonprofit entities, Relator used publicly available information on the non-profit status of Defendant (among others) and publicly available information on Defendant's PPP Loans to allege violations of the FCA.[9]

Defendant's tax status is widely available to the general public via the IRS[10] or third-party websites.[11] Information related to Defendants' PPP loans is publicly available through the SBA website.[12] The PPP loan information includes (among other things) loan number, date approved, borrower name, borrower address, whether the borrower was a nonprofit, forgiveness amount and forgiveness date. Defendants' PPP information can be found on the SBA's website.[13] The publicly available information on the IRS' and SBA's website therefore fits within the "broad ordinary meaning" of the term "Federal report" under the *qui tam* enforcement provision of the FCA in 31

---

[7] The article also warns that the "unsealed litigation efforts could just be the tip of the iceberg in the evolving landscape" and that "private clubs and HOAs are likely to be in the crosshairs of serial relators for the time being."

[8] https://ifightforyourrights.com/whistleblower-news/nonprofit-organizations-settle-5-8m-allegations-of-ppp-loan-fraud/ (last visited October 14, 2026).

[9] As with the news media coverage detailed above, this Court may take judicial notice of the information on government websites. *See* Fed. R. Evid. 201; *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) (recognizing "the authority of a court to take judicial notice of government websites")).

[10] *See, e.g.*, IRS Tax Exempt Organization Search, available at https://www.irs.gov/charities-non-profits/tax-exempt-organization-search.

[11] *See, e.g.*, Propublica Nonprofit Explorer, available at https://projects.propublica.org/nonprofits/.

[12] *See, e.g.*, United States Small Business Administration, PPP FOIA, available at, https://data.sba.gov/dataset/ppp-foia.

[13] https://data.sba.gov/dataset/ppp-foia.

U.S.C. § 3730(e)(4)(A). *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 411 (2011) (stating that a report is "something that gives information," a "notification," and an "official or formal statement of facts").

## II. Relator's ARPA, Scienter, and Materiality Arguments Also Fail.

Relator's own authority defeats its argument. It says the SBA's rule applies ARPA to "loan forgiveness applications submitted[] on or after March 11, 2021." Dkt. 141 at 36 (quoting 86 Fed. Reg. 15083, 15084). But forgiveness certifications made after that date cannot be false. And 13 C.F.R. § 120.110(i) reaches only clubs that limit the "*number*" of memberships; sponsorship, initiation fees, and guest rules are terms of admission, which Relator concedes "are common among 501(c)(7) clubs." Dkt. 141 at 39. Nor does knowing one's own admission rules plead knowledge of club disqualification from the PPP loan. *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750–52 (2023).

Materiality fails too. Payment despite actual knowledge is "strong evidence" of immateriality. *United States ex rel. Kraemer v. United Dairies, L.L.P.*, 82 F.4th 595, 603–04 (8th Cir. 2023) (citation omitted); *see United States ex rel. Holt v. Medicare Medicaid Advisors, Inc.*, 115 F.4th 908, 918 (8th Cir. 2024). The tax status was public, the SBA forgave the loans, and Congress then made such clubs eligible retroactively anyway. Relator's press releases involve other clubs, and the United States government declined here, unlike in the "materially identical" cases where it intervened. *See* Dkt. 141 at 35 n.2.

## CONCLUSION

The Court should dismiss the FAC with prejudice and award attorney fees.

DICKINSON, BRADSHAW, FOWLER & HAGEN, P.C.

By: Cody J. Edwards

Cody J. Edwards, AT0010913
Theodore W. Craig, AT0010226
Grant W. Gasner, AT0016078
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
Phone: (515) 243-4191
Fax: (515) 246-5808
E-Mail: cedwards@dickinsonbradshaw.com
tcraig@dickinsonbradshaw.com
ggasner@dickinsonbradshaw.com

ATTORNEYS FOR DEFENDANTS COLUMBUS CLUB, INC., THE DES MOINES EMBASSY CLUB, AND WASHINGTON GOLF & COUNTRY CLUB

Original electronically filed.

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was filed electronically and served upon all counsel of record through the Court's CM/ECF system this 15th day of October, 2026.

/s/ *Heidi Dorrell*